IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-03-2182 |
| | § | |
| INTERNATIONAL HOUSE OF | § | |
| PANCAKES, INC. AND | § | |
| MOHAMAD AMIN, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Nautilus Insurance Company ("Nautilus") filed this declaratory judgment suit seeking to establish that it had no duty to defend or indemnify the International House of Pancakes ("IHOP") and one of IHOP's franchise owners in two underlying state-court suits. In each suit, a woman alleged that a manager employed in a franchised IHOP restaurant had sexually harassed and raped her. This court held that Nautilus had no duty to defend or indemnify IHOP or the owner of the franchises, Mohamad Amin, against the claims raised by one underlying plaintiff but did have a duty to defend IHOP and Amin against the claims raised by the other underlying plaintiff. (Docket Entry No. 31).

Nautilus then filed a motion for summary judgment seeking a ruling that it was not obligated to pay 18 percent penalty interest and attorneys' fees to IHOP under Article 21.55 of the Texas Insurance Code, the "Prompt Payment Statute" (current version at TEX. INS. CODE §§ 542.051–542.061). Nautilus contended that the Prompt Payment Statute did not apply to an insurer's denial of an insured's claim for a defense against a third-party claimant's suit. Nautilus

also contended that the Prompt Payment Statute was both facially unconstitutional and void for vagueness as applied to this claim for defense against a third-party suit. (Docket Entry No. 42). IHOP cross-moved for summary judgment, seeking payment of its defense costs plus the 18 percent penalty interest and attorneys' fees provided under the Prompt Payment Statute. (Docket Entry No 45). Nautilus replied, (Docket Entry Nos. 49, 50), and IHOP surreplied, (Docket Entry No. 53).

At the time of the parties' briefing, the Fifth Circuit had certified to the Texas Supreme Court the following question: "[D]oes Article 21.55 of the Texas Insurance Code apply to a CGL insurer's breach of the duty to defend?" *Lamar Homes Inc. v. Mid-Continent Casualty Co.*, 428 F.3d 193, 201 (5th Cir. 2005). This court abstained from ruling on the parties' cross-motions for summary judgment and stayed the case pending the Texas Supreme Court's answer. Nautilus submitted an amicus brief in the *Lamar Homes* action that argued that the Prompt Payment Statute did not apply to the duty to defend and that the statute was facially unconstitutional and unconstitutional as applied to the duty to defend. (Docket Entry No. 57, Ex. A).

On August 31, 2007, the Texas Supreme Court answered the certified question. In *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1 (Tex. 2007), the court held that the Prompt Payment Statute does apply to an insurer's refusal to defend, or delay in defending, an insured against a third-party claimant's suit. The Texas Supreme Court's opinion did not address the constitutional issues raised in Nautilus's amicus brief.

On March 11, 2008, Nautilus filed an unopposed motion to vacate the stay in this case. Nautilus filed a brief raising one question: the constitutionality of the Prompt Payment Statute in light of the Texas Supreme Court's holding in *Lamar Homes*. (Docket Entry No. 56). IHOP has

responded, (Docket Entry No. 60). IHOP and Nautilus have also supplied supplemental briefing. (Docket Entry Nos. 65, 66).

Based on the motions, responses, and replies; the summary judgment record; and the applicable law, this court denies Nautilus's constitutionality challenge and its motion for summary judgment, (Docket Entry Nos. 43, 56), and grants IHOP's cross-motion for summary judgment. (Docket Entry No. 45). By **April 30, 2009**, IHOP will submit to this court an affidavit attaching documents showing 1) the amount due for IHOP's defense costs; 2) the amount of the 18 percent statutory penalty; and 3) the amount of attorneys' fees IHOP seeks.

The reasons are explained below.

## I. Background

Section 542.060 of the Texas Insurance Code imposes a penalty on insurers for failure to pay claims within certain time frames specified in sections 542.057and 542.058 of the Prompt Payment Statute. Section 542.060 states:

> (a) If an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees.
>
> (b) If a suit is filed, the attorney's fees shall be taxed as part of the costs in the case.

TEX. INS. CODE § 542.060. In *Lamar Homes*, the Texas Supreme Court analyzed § 542.060. Nautilus's potential liability arises under the penalty provision of a previous but substantially similar

version of the statute, Texas Insurance Code Article 21.55.[1] Nautilus does not argue that differences between the previous and revised versions affect the analysis in this case.

Section 542.051 defines the term "claim" as used in § 542.060:

> "Claim" means a first-party claim that:
> (A) is made by an insured or policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract; and
> (B) must be paid by the insurer directly to the insured or beneficiary.

TEX. INS. CODE § 542.051. The Prompt Payment Statute does not define "first-party claim" or otherwise refer to the term. A different portion of the Texas Insurance Code, the Property Casualty Insurance Guaranty Act, states: "'Claimant' means an insured making a first-party claim or a person instituting a liability claim." TEX. INS. CODE § 462.004(4).

In *Lamar Homes*, the Texas Supreme Court held that the Prompt Payment Statute's penalty and attorneys' fee provision, § 524.060, applies to an insured's claims for the cost of defending against a suit filed by third-party claimant. 242 S.W.3d at 16–20. The Texas Supreme Court noted that Texas state and federal courts had divided as to the applicability of § 542.060 to such claims, but observed that a majority of courts had concluded that it did apply. The Texas Supreme Court agreed with those courts, holding that "an insured's claim for defense costs is a first-party claim

---

[1] The penalty provision of Article 21.55 § 6 states:
  In all cases where a claim is made pursuant to a policy of insurance and the insurer liable therefor is not in compliance with the requirements of this article, such insurer shall be liable to pay the holder of the policy, or the beneficiary making a claim under the policy, in addition to the amount of the claim, 18 percent per annum of the amount of such claim as damages, together with reasonable attorney fees. If suit is filed, such attorney fees shall be taxed as part of the costs in the case.
TEX. INS. CODE art. 21.55 § 6.

because it concerns a direct loss to the insured; that is, the claim does not belong to a third party." *Id.* at 17. The Court noted that although the Prompt Payment Statute does not define "first-party claim," the case law had "previously distinguished first-party and third-party claims on the basis of the claimant's relationship to the loss." "[A] first party case is stated when 'an insured seeks recovery for the insured's own loss,'" whereas a "third-party claim is stated when 'an insured seeks coverage for injuries to a third party.'" *Id.* (quoting *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 n.2 (Tex. 1997)). The Texas Supreme Court rejected the argument that a "first-party claim" could only arise under a "first-party insurance policy," a term of art that refers to a policy that creates an obligation by the insurer only to the insured, and is distinct from a "third-party" or "liability" insurance policy that protects and indemnifies the insured against the claims of third parties. The Texas Supreme Court found no reason, in logic, the case law, or the plain meaning of the statute, why a "first-party claim" could not arise under a liability policy when the insured under that policy makes a direct claim against the insurer for defense costs. *Id.* at 17–18. The Texas Supreme Court noted that the Prompt Payment Statute applies "not solely to first-party insurers," but to "any insurer authorized to engage in business as an insurance company or to provide insurance in this state," including liability insurers. *Id.* at 18. The Texas Supreme Court rejected the argument that defense claims could not be "first-party claims" because payments in some cases might be made to the insured's attorney rather than "directly to the insured," as § 542.051 requires. The Texas Supreme Court reasoned that this construction "would eliminate much of the statute's recognized application. For example, health insurance claims, property damage claims, and claims personal to the insured under an automobile policy are first-party claims that are often paid directly to the service provider rather than the insured." *Id.* Finally, the Texas Supreme Court rejected

5

criticisms that applying the Prompt Payment Statute to defense claims was "unworkable" because an insurer's liability for defense costs is typically ongoing until the liability issue is resolved. The Texas Supreme Court concluded that the statute simply required that the insurer pay the insured's legal bills as they came due. *Id.* at 19.

Three justices filed a dissent in *Lamar Homes*. The dissent argued that the term "first-party claim" "h[as] never been used by anyone familiar with the insurance business to refer to the duty to defend." *Id.* at 24. The dissent contended that "first party" referred to a claim under a "first party insurance policy," to the exclusion of a claim under a liability policy. *Id.* at 26–27. The dissent did not raise any constitutional issue. Subsequent cases applying *Lamar Homes* have not raised any constitutional issues.

In this suit, Nautilus contends that it is not liable to IHOP under the Prompt Payment Statute for its refusal to defend IHOP in the lawsuit filed by one of the underlying plaintiffs. Nautilus argues that the Prompt Payment Statute is penal in nature. Nautilus raises a facial challenge to the Prompt Payment Statute, arguing that a provision in the statute requiring that "[t]his subchapter shall be liberally construed to promote the prompt payment of insurance claims" is unconstitutional because due process requires that penal statutes be strictly construed. Nautilus also argues that the Prompt Payment Statute is unconstitutional as applied to IHOP's claim because Nautilus did not have fair notice that the statutory penalty applied to this claim by its insured for a defense against a third-party suit. Nautilus argues that the Prompt Payment Statute does not provide fair notice that a claim for payment of defense costs against a third-party suit constitutes a "first-party claim" under § 542.051 that "must be paid by the insurer directly to the insured or beneficiary."

## II.     The Legal Standard

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (collecting authority). "A statute is unconstitutionally vague if it does not give 'a person of ordinary intelligence a reasonable opportunity to know what is prohibited.'" *Groome Resources, Ltd. v. Parish of Jefferson*, 234 F.3d 192, 217 (5th Cir. 2000) (quoting *United States v. Bird*, 124 F.3d 667, 683 (5th Cir. 1997)). "The void-for-vagueness doctrine has been primarily employed to strike down criminal laws." *Id.* (citing *Okpalobi v. Foster*, 190 F.3d 337, 358 n.10 (5th Cir. 1999)). "In the civil context, 'the statute must be so vague and indefinite as really to be no rule at all.'" *Id.* (quoting *Boutilier v. INS*, 387 U.S. 118, 123 (1967)); *see also Fernandes v. Limmer*, 663 F.2d 619, 636 (5th Cir. 1981) ("'We can never expect mathematical certainty from our language.'  The minimal ambiguity presented in [the challenged statutes] is well within constitutional limits." (quoting *ISKCON v. Eaves*, 601 F.2d 809, 830 (5th Cir.1979))).

In determining whether a statute is unconstitutionally vague, courts look to whether the statute "provide[s] definite standards for those who apply them." *Beckerman v. Tupelo*, 664 F.2d 502, 511 (5th Cir. 1981).  Such standards may be found on the face of a statute or in other authority that has defined the terms. *See, e.g., J & B Entm't v. City of Jackson*, 152 F.3d 362, 368 (5th Cir. 1998) (rejecting a void-for-vagueness challenge by noting that the language at issue – "serious literary, artistic, scientific, or political value" – has been interpreted by many courts since it was introduced by the Supreme Court in its test for "obscenity"). That courts have interpreted a statute differently does not render it void for vagueness. *United States v. Jackson*, 968 F.2d 158, 163 (2d Cir. 1992). "[I]t is not a test for the constitutionality of a statute that it be so unambiguous that all

judges will read the statute in only one way." *Franklin v. First Money, Inc.*, 427. F. Supp. 66, 69–70 (E.D. La. 1976), *aff'd* 599 F.2d 615 (5th Cir. 1979). If a statute gives a defendant "sufficient warning" that its conduct is unlawful, then "the statute is constitutional as applied to [the defendant]." *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 33 (1963).

A facial challenge to a law is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [law] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *United States v. Robinson*, 367 F.3d 278, 290 (5th Cir. 2004). Facial challenges to the constitutionality of statutes should be granted "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). Facial challenges "often rest on speculation" because they do not involve specific applications of a statute, but rather hypothetical applications. *Washington State Grange v. Washington State Republican Party*, --- U.S. ---, 128 S.Ct. 1184, 1191 (2008). Invalidating a law that is perfectly constitutional in some applications has "obvious harmful effects." *United States v. Williams*, --- U.S. ---, 128 S.Ct. 1830, 1838 (2008).

**III. Analysis**

**A. The Facial Challenge**

Section 542.054 of the Prompt Payment Act provides that "[t]his subchapter shall be liberally construed to promote the prompt payment of insurance claims." TEX. INS. CODE § 542.054. Nautilus argues that this language makes § 542.060 facially invalid because § 542.060 is penal in nature and, as a matter of due process, requires strict construction. Putting aside that strict construction may not always be required in civil penalty statutes, *Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982), *Ford Motor Company v. Texas Dep't*

*of Transportation*, 264 F.3d 493, 507–08 (5th Cir. 2001), Nautilus does not dispute that § 542.054 applies to provisions other than § 542.060. Nautilus has not argued that § 542.054 is unconstitutional with regard to these other provisions or makes these other provisions unconstitutional. A facial attack cannot succeed unless there is "no set of circumstances exists under which the [law] would be valid." *United States v. Salerno*, 481 U.S. at 745; *United States v. Robinson*, 367 F.3d at 290. Nautilus has made no such showing in this case. Nautilus's motion for summary judgment of facial unconstitutionality is denied; IHOP's cross-motion for summary judgment is granted.

**B.     The As-Applied Challenge**

**1.     Whether Section 542.060 is a "Penal" Statute**

The parties disagree about whether the penalty and attorneys' fee provisions in § 542.060 make it a "penal" statute. Whether § 542.060 is penal in nature affects the strictness with which the statute is to be construed. "The word 'penal,' as applied to statutes, has many different shades of meaning, as it is one of the most elastic terms known to the law." 82 C.J.S. *Statutes* § 378 (2008). Although the core definition of "penal" refers to offenses against the state, the term "has been enlarged to include . . . all statutes which define an offense and prescribe a punishment," including a recovery of a penalty "by a private individual in an action of debt." *Id.* "If the statute permits a recovery of the penalty by an individual for the purpose of enforcing obedience to the mandate of the law by punishing its violation, it is penal in character. However, if the recovery of the penalty by an individual is permitted as a remedy for the injury or loss suffered by him, the statute is remedial." *Id.*

9

Section 542.060 provides that when an insurer fails timely to pay a claim by an insured, the insurer is liable not just for the amount due on the claim but also "interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees." The Texas Supreme Court has characterized the section as "penal in nature," *State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 805 (Tex. 2007), as have many of the Texas appellate courts, *see, e.g., Texas Farmers Ins. Co. v. Cameron*, 24 S.W.3d 386, 399 (Tex. App.–Dallas 2000, pet. denied); *J.C. Penney Life Ins. Co. v. Heinrich*, 32 S.W.3d 280, 289 (Tex. App.–San Antonio 2000, pet. denied). Similarly, the Texas Supreme Court has characterized statutes permitting the award of attorneys' fees, *Medical City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 58 (Tex. 2008); *New Amsterdam Cas. Co. v. Tex. Indus., Inc.*, 414 S.W.2d 914, 915 (Tex. 1967), and permitting the award of treble-damages under the Deceptive Trade Practices Act ("DTPA"), *see Pennington v. Singleton*, 606 S.W.2d 682, 688 (Tex. 1980), as penal in nature. The relevant precedents show that the statute has been regarded as penal in nature.

### 2.     Whether Section 542.060 Should Be Strictly Construed

It is a common-law "maxim that penal statutes should be strictly construed." *United States v. Cook*, 384 U.S. 257, 262 (1966). The maxim is based on constitutional due process concerns. *See Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926) ("[T]he terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties . . . . [A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."); *Pennington*, 606 S.W.2d at 688 ("[A] widely recognized line of decisions hold[ ] that penal statutes

must give fair notice of the prohibited conduct in order to come within constitutional due process limitations.").

These due process concerns, however, are more pressing in the context of criminal liability than civil liability. "[I]n the field of regulatory statutes governing business activity, greater leeway is allowed." *Pennington*, 606 S.W.2d at 689. The Supreme Court has explained:

> [E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.

*Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.*, 455 U.S. at 498–99. Partly because civil penal statutes require less strict construction, "the legislatures of many states have directly abrogated or modified the rule" of strict construction of penal statutes. 3 NORMAN J. SINGER *ET AL.*, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 59:7 (6th ed. 2008); *see also* 82 C.J.S. *Statutes* § 378 (2008) ("The rule of strict construction of penal statutes has been abolished by some statutes.").

An example of statutory abrogation is in the Prompt Payment Statute itself. The language directs that the statute "shall be liberally construed to promote the prompt payment of insurance claims." TEX. INS. CODE § 542.054. The Texas Supreme Court recently applied this liberal-construction provision in assessing a penalty under § 524.060 without noting any constitutional infirmity. *State Farm Life Ins. Co v. Martinez*, 216 S.W.3d at 805. In *Martinez*, the Texas Supreme Court noted that "prompt payment statutes before 1991 were considered penal in nature and strictly

construed. But in the 1991 amendments the legislature provided that the statute 'shall be liberally construed to promote its underlying purpose.'" *Id. Martinez* involved an insurer that delayed paying under a life insurance policy while trying to determine the party to whom the proceeds should be paid. The insurer ultimately filed an interpleader action. Before the 1991 amendments, the cases had interpreted the Prompt Payment Statute not to apply to insurers that delayed in good faith while trying to determine the proper claimant and that filed an interpleader action to resolve the question. The Texas Supreme Court concluded in *Martinez* that assessing the delay penalty against the insurer under the amended Prompt Payment Statute was consistent with the language of the statute and consistent with the § 524.054 requirement that the statute should be liberally construed in favor of the claimant. The Court added that the result might have been different had a strict construction rule applied, which might have required the ambiguity created by the precedent to be resolved in the insurer's favor. *Id.; see also Mid-Century Ins. Co. of Texas v. Barclay*, 880 S.W.2d 807, 812 n.4 (Tex. App.–Austin 1994, writ denied) (rejecting the insurer's contention that the Prompt Payment Statute "must be strictly construed because it is penal in nature" because the "statute itself provides" for liberal construction).

In *Pennington v. Singleton*, 606 S.W.2d at 688, the defendant challenged the constitutionality of the DTPA treble damages provision as applied to the conduct with which the defendant was charged. The defendant argued that as a matter of due process, the provisions of the DTPA should be strictly construed and that strict construction would exclude application to the conduct in which the defendant had engaged. The Texas Supreme Court noted in another part of the opinion that the DTPA was to be "liberally construed," *id.* at 686, but did not invoke the liberal construction rule in addressing the defendant's constitutional issue. The Texas Supreme Court acknowledged that

12

"penal statutes must give fair notice of the prohibited conduct in order to come within constitutional due process limitations," although it also noted that "greater leeway is allowed" in the civil context. *Id.* at 688–89. The Texas Supreme Court concluded, without invoking the DTPA's liberal-construction provision, that the language of the statute was sufficiently clear to put the defendant on notice and satisfy due process. *Id.* at 689.[2]

Other courts have similarly sidestepped statutory requirements for liberal construction if the penalty imposed could be sustained under the statute without using liberal construction. *See* 3 SUTHERLAND § 59:7 (noting that some courts in states with liberal-construction provisions in statutes have applied the provisions inconsistently, ignored them, or upheld the result "with or without such liberalizing statutes") (citing cases).

As discussed below, this court need not decide whether the liberal-construction requirement in § 524.051 may constitutionally be applied in this case. In this case, as in *Pennington*, even under strict construction, the penalty provision of § 524.060 applied to Nautilus's conduct and provided sufficient notice that it covered such conduct.

---

[2] A Texas Court of Appeals concluded, without noting any constitutional infirmity, that the DTPA treble damages provision did not need to be strictly construed. In *Franklin v. State*, 631 S.W.2d 519 (Tex. App.–El Paso 1982, writ refused n.r.e.), the court examined the damages provision of the DTPA and held as follows:

> Appellant argues that [the treble damages provision] is a penal statute which must be strictly construed in favor of the Defendant . . . . Appellant cites cases holding that statutes imposing penalties must be strictly construed and must not be construed to include anything beyond their letter even though within their spirit. The proposition of law enunciated by those cases is sound but not applicable to this case because the legislature has placed language in the Act itself, specifying that it shall be given a liberal construction.

*Id.* at 521.

13

### 3. Whether, Strictly Construed, Section 542.060 is Unconstitutionally Vague as Applied to Nautilus

"[I]n any case concerning the interpretation of a statute the 'starting point' must be the language of the statute itself." *Lewis v. United States*, 445 U.S. 55, 60 (1980). "[W]here the language of a penal statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory interpretation. 73 AM. JUR. 2D STATUTES § 196 (2d ed. 2008) (citing *Lewis*). "The strict-construction principle is merely a guide to statutory interpretation," and "only serves as an aid for resolving ambiguity; it is not to be used to beget one." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 491 n.10 (1985) (quoting *Callanan v. United States*, 364 U.S. 587, 596 (1961)). The rule of strict construction for penal statutes "does not prevent the courts from calling to their aid all other rules as to interpretation and giving each its appropriate scope." 73 AM. JUR. 2D STATUTES § 182. "A strict construction permits the words to be read naturally," in a "reasonable, sensible, and fair construction," taking a "common-sense view of the statute was a whole." *Id.* The canon of strict construction "is not an inexorable command to override common sense and evident statutory purpose, and does not require that the act be given the narrowest meaning." *United States v. Cook*, 384 U.S. at 262 (internal citations and quotations omitted).

Section 542.060 imposes a penalty for the late payment of a "claim," which is defined under the Prompt Payment Statute as a "first-party claim" that "is made by an insured or policyholder under an insurance policy," and "must be paid by the insurer directly to the insured." Nautilus does not dispute that IHOP's claim in this case was made under its insurance policy with Nautilus. The issues are whether, strictly construed, the statute gave Nautilus fair notice that IHOP's claim for

reimbursement of defense costs was a "first-party claim" of the type that "must be paid by the insurer directly to the insured."

Even strictly construed, the language of the Prompt Payment Statute provides fair warning that Nautilus could be liable for its delay in paying IHOP's claim for defense costs. As the majority in *Lamar Homes* recognized, the case law "distinguishe[s] first-party and third-party claims on the basis of the claimant's relationship to the loss": a first-party claim occurs when "an insured seeks recovery for the insured's own loss," while a third-party claim occurs when "an insured seeks coverage for injuries to a third party." 242 S.W.3d at 17 (citing *Universe Life Ins. Co. v. Giles*, 950 S.W.2d at 54 n.2). Nautilus argues that the term "first-party claim" as used in another portion of the Insurance Code, the Property Casualty Insurance Guaranty Act, shows that a "first-party claim" is distinct from the type of claim at issue: a claim by an insured against an insurer for the costs of defending a suit by a third party. But the Guaranty Act appears consistent with the *Lamar Homes* majority's interpretation. The Guaranty Act defines a "claimant" as "an *insured* making a first-party claim or a *person* instituting a liability claim." TEX. INS. CODE § 462.004(4) (emphasis added). Under this provision, a "first-party claim" is one made by an insured against an insurer under a policy between the parties. Distinct from a "first-party claim" is a "liability claim" made by a person who is not an insured but to whom the insurer is liable by virtue of the insurer's coverage of the insured. As in the Prompt Payment Statute, the relevant statutory distinction is based not on the type of insurance policy, but on the nature of the relationship between the insurer and the claimant.

Section 542.060 also provides fair notice that a claim by an insured for a defense or defense costs is a claim that "must be paid by the insurer directly to the insured." As the Court in *Lamar Homes* noted, "[w]hen the claim involves a defense benefit, the payee will always be either an

insured or the insured's attorney." 242 S.W.3d at 18. The Prompt Payment Statute has historically and routinely been construed as applying to types of insurance in which the payments are made "directly" to the insured or to the insured's service provider. To assert that a payment to an attorney is not sufficiently "direct" to bring the provision within the ambit of the statute would "eliminate most of the statute's application." *Id.* "For example, health insurance claims, property damage claims, and claims personal to the insured under an automobile policy are first-party claims that are often paid directly to the service provider rather than the insured." *Id.* Even under the strict construction arguably due under a civil penal statute, the language of § 542.060 provides fair notice that it applied to a claim for defense costs.

Nautilus argues that the Prompt Payment Statute is unconstitutionally vague as applied to claims by insureds that their insurer did not timely pay the costs of defending against a third-party suit. Nautilus emphasizes that courts have disagreed about whether the statute applies to such claims, as did the majority and dissent in *Lamar Homes*. But "it is not a test for the constitutionality of a statute that it be so unambiguous that all judges will read the statute in only one way." *Franklin v. First Money Inc.*, 427 F. Supp. at 69. "[J]ust because other courts of appeals differ in their definitions of a term does not mean that the term is void for vagueness." *United States v. Davis*, 15 F.3d 902, 912 (9th Cir. 1994), *rev'd on other grounds*, 36 F.3d 1424 (9th Cir. 1994); *United States v. Wheeler*, 972 F.2d 927, 928 (8 th Cir. 1992); *United States v. Jackson*, 968 F.2d 158, 163 (2d Cir. 1992). "'Statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.'" *Pennington*, 606 S.W.2d at 689 (citing *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963)). The void for vagueness doctrine "does not ordain the unconstitutionality of a statute that two lawyers may read

differently, nor does it mean that persons subject to the law may bank against . . . inconsistent decisions." *Franklin v. First Money Inc.*, 427 F. Supp. at 69.

Even in the context of civil statutes that are penal in nature, "neither absolute uniformity of interpretation, nor total absence of ambiguity is semantically or practically achievable, or, it necessarily follows[,] constitutionally required." *Id.*, 427 F. Supp. at 70 (rejecting a vagueness challenge to a penalty provision of the Truth-in-Lending Act). "[V]arying interpretations by laymen, lawyers, and judges does not mean the statute is unconstitutionally vague." *Galjour v. Gen. Am. Tank Car Corp.*, 764 F. Supp. 1093, 1098 (E.D. La. 1991) (rejecting a vagueness challenge to a Louisiana exemplary damages statute).

In *Lamar Homes,* the Texas Supreme Court noted the line of cases holding that the Prompt Payment Statute did not apply to insurance defense claims. *See, e.g., Summit Custom Homes, Inc. v. Great Am. Lloyds Ins. Co.*, 202 S.W.3d 823 (Tex. App.–Dallas 2006, pet. withdrawn); *Ulico Cas. Co. v. Allied Pilots Ass'n*, 187 S.W.3d 91, 104 (Tex. App.–Fort Worth 2005, pet. granted); *Serv. Lloyd's Ins. Co. v. J.C. Wink, Inc.*, 182 S.W.3d 19, 32–33 (Tex. App.–San Antonio 2005, pet. granted); *TIG Ins. Co. v. Dallas Basketball, Ltd.*, 129 S.W.3d 232 (Tex. App.–Dallas 2004, pet. denied). The Texas Supreme Court also noted that the majority of courts to consider the question had reached a different conclusion, holding that the Prompt Payment Statute did apply to such claims. *See, e.g., Rx.Com, Inc. v. Hartford Fire Ins. Co.*, 364 F. Supp. 2d 609, 611–20 (S.D. Tex. 2005); *Hous. Auth. of Dallas v. Northland Ins. Co.*, 333 F. Supp. 2d 595 (N.D. Tex. 2004); *Travelers Indem. Co. v. Presbyterian Healthcare Res.*, 313 F. Supp. 2d 648 (N.D. Tex.2004); *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F. Supp. 2d 601, 632 n. 19 (E.D. Tex. 2003); *Mt. Hawley Ins. Co. v. Steve Roberts Custom Builders, Inc.*, 215 F. Supp. 2d 783, 794 (E.D.


Tex. 2002); *N. County Mut. Ins. Co. v. Davalos*, 84 S.W.3d 314, 319 (Tex. App.–Corpus Christi 2002), *rev'd on other grounds*, 140 S.W.3d 685 (Tex. 2004); *see also E & R Rubalcava Constr., Inc. v. Burlington Ins. Co.*, 148 F. Supp. 2d 746, 751 (N.D. Tex. 2001); *Sentry Ins. Co. v. Greenleaf Software, Inc.*, 91 F. Supp. 2d 920, 925 (N.D. Tex. 2000), *vacated*, 2000 WL 33254495 (N.D. Tex. Apr 18, 2000); *Ryland Group, Inc. v. Travelers Indem. Co.*, 2000 WL 33544086, at *12 (W.D. Tex. Oct.25, 2000).

The fact that some courts disagreed about the application of § 542.060 to claims by insureds for costs of defending against a third-party suit does not mean that applying the statute to such claims makes it so vague as to violate due process. *Davis*, 15 F.3d at 912; *Wheeler*, 972 F.2d at 928; *Jackson*, 968 F.2d at163; *Pennington*, 606 S.W.2d at 689; *Galjour*, 764 F. Supp. at 1098; *Franklin*, 427 F. Supp. at 70. The issue is "whether the language of the regulations and the statute or other factors" made the applicability of § 542.060 "reasonably foreseeable." *Franklin*, 427 F. Supp. at 70. The plain language of the statute, strictly construed, made it reasonably foreseeable that claims for defense in liability suits, such as the claim at issue in this case, would be subject to the statute's penalty and attorneys' fee provisions. The fact that a majority of courts had so construed § 542.060 supports the conclusion that it was reasonably foreseeable to Nautilus that if the refusal to pay IHOP's defense costs violated the statute, Nautilus would be subject to the 18 percent interest and attorneys' fees imposed under § 542.060.

The Prompt Payment Statute is not unconstitutionally vague as applied. Nautilus's motion for summary judgment on this issue is denied and IHOP's cross-motion for summary judgment is granted.

## V.     Conclusion

The liberal construction requirements of § 542.054 are not facially invalid and the penalty and attorneys' fee provisions of § 542.060 are not unconstitutional as applied to Nautilus. Nautilus's motion for summary judgment is denied; IHOP's cross-motion for summary judgment is granted. Final judgment is entered by separate order.

By **April 30, 2009**, IHOP will submit to this court an affidavit attaching documents showing 1) the amount due for IHOP's defense costs; 2) the amount of the 18 percent statutory penalty; and 3) the amount of attorneys' fees IHOP seeks.

SIGNED on March 31, 2009, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge