**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-03-2182 |
| | § | |
| INTERNATIONAL HOUSE OF | § | |
| PANCAKES, INC. AND | § | |
| MOHAMAD AMIN, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This is an insurance coverage dispute arising out of two underlying state-court lawsuits. In prior rulings, this court held that the insurer, Nautilus Insurance Company had a duty to defend International House of Pancakes, Inc. (IHOP) and an IHOP franchise owner, Mohamad Amin, against one of the underlying suits but not against the other. (Docket Entry No. 31). This court also held that the Texas Prompt Payment Statute, TEX. INS. CODE §§ 542.051-542.061, applied. (Docket Entry No. 67). Under the statute, IHOP is entitled to its defense costs in the covered underlying lawsuit, an 18% annual penalty on unpaid defense costs, and reasonable attorneys' fees and costs incurred litigating coverage for that lawsuit. IHOP has now submitted affidavits and supporting documentation in support of its claim for those costs and fees. (Docket Entry No. 68). Nautilus has objected in part, disputing the amount IHOP seeks for the fees it incurred in litigating coverage. Nautilus specifically disputes IHOP's assertion that it would have incurred 95% of its fees in the coverage litigation if only one underlying lawsuit – the one this court held was covered – was

involved. Nautilus asserts that the record does not support allocating 95% of the fees to the successful claim and only 5% to the unsuccessful claim. (Docket Entry No. 69).

Based on a careful review of the motions and responses relating to attorneys' fees; the affidavits and billing records; the prior opinions and filings in this case, and the applicable law, this court grants IHOP's fee application in part and modifies it in part. IHOP is ordered to submit a proposed judgment consistent with this Memorandum and Order by **December 23, 2009.**

The reasons for these rulings are explained below.

**I. Background**

The facts are set out in detail in this court's earlier opinions of September 30, 2004, (Docket Entry No. 31), and March 31, 2009, (Docket Entry No. 67). In brief, this insurance coverage declaratory judgment action arose out of two lawsuits against IHOP and one of its franchisees, Mohamad Amin, filed by two female employees in state court. Both employees alleged sexual assault by Amin and others. IHOP defended the underlying lawsuits in state court and sought defense costs from Nautilus, its insurer. In this federal suit, Nautilus sought a declaratory judgment that it had no duty to defend or indemnify. This court decided in 2004 that Nautilus had a duty to defend IHOP and Amin in one of the underlying suits – the suit brought by N. Khalaf – but had no duty to defend with respect to the other underlying suit – the suit brought by K. Whitehead . (Docket Entry No. 31). After the parties filed summary judgment motions, this litigation stalled pending a ruling by the Texas Supreme Court about the Texas Prompt Payment Statute, TEX. INS. CODE §§ 542.051-542.061.[1] The Supreme Court decided that case in August 2007. This court

---

[1] IHOP's claim arose under the prior version of the statute, version of the statute, Texas Insurance Code Article 21.55. When the statute was recodified, no substantial change was made.

subsequently granted IHOP's cross-motion for summary judgment, ruling that IHOP could recover the defense costs it incurred in the *Khalaf* litigation as well as the remedies under the Prompt Payment Statute. (Docket Entry No. 67). IHOP was ordered to submit affidavits and supporting documents showing (1) the amount due for IHOP's defense costs in the *Khalaf* case, (2) the amount resulting from the 18% penalty under the Prompt Payment Statute, and (3) the attorneys' fees and costs for this coverage litigation. (*Id.* at 3).

On April 30, 2009, IHOP submitted the affidavit of Micah Skidmore, an associate at Haynes & Boone who was one IHOP's attorneys in the coverage litigation. (Docket Entry No. 68). Skidmore stated that IHOP had paid $14,973.55 in defending the *Khalaf* litigation. (*Id.*, ¶ 4). Skidmore supported that assertion with the affidavit of William Davis, a partner at Jackson Lewis L.L.P., which represented IHOP in the *Khalaf* litigation. (*Id.*, Ex. 1). Davis attached the bills his firm prepared and sent to IHOP. (*Id.*). Skidmore also calculated the 18% annual penalty under § 542.060 of the Prompt Payment Statute. Skidmore's affidavit stated that, as of April 30, 2009, the penalty was $15,804.49. (*Id.*, ¶ 6). Finally, Skidmore stated that IHOP was due $119,674.34 in attorneys' fees for the coverage litigation. (*Id.*, ¶ 8). IHOP submitted the affidavit of Deborah Coldwell, lead counsel for IHOP in the coverage litigation. Coldwell represented IHOP both when she was a partner in Jenkens & Gilchrist firm and later Haynes & Boone. (*Id.*, Ex. 2). Coldwell submitted the bills sent by both firms to IHOP during this litigation through April 30, 2009. Coldwell's affidavit included the following statement:

> In my opinion, less than 5% of the total amount of attorneys' fees and expenses incurred by IHOP in connection with the Nautilus Litigation can be attributed solely to the pursuit of coverage for the *Whitehead* litigation. Therefore, over 95% of the reasonable and necessary attorney's fees and expenses incurred in connection with this matter would have been spent in pursuit of coverage for the

3

> *Khalaf* litigation even if coverage for the *Whitehead* litigation had not been sought.

(*Id.*, Ex. 2, ¶ 22).

This statement mirrored an attorneys' fees affidavit Coldwell submitted in 2005, before this case was stayed pending the Texas Supreme Court decision. (Docket Entry No. 46, Ex. B). In that affidavit, Coldwell stated:

> From August 2003 through May 2005, IHOP has incurred attorneys' fees, costs and expenses in this matter in the amount of approximately $70, 661.28. In my opinion, no more than 5% of this amount can be attributed solely to the pursuit of coverage for the *Whitehead* litigation. Therefore, 95% would have been spent in pursuit of coverage for the *Khalaf* litigation even had coverage for the *Whitehead* claim not been sought.

(*Id.*, Ex. B, ¶ 5).

In 2005 and again in 2009, Nautilus objected to the assertion that 95% of the fees in the coverage litigation were attributable to the *Khalaf* litigation and only 5% to the *Whitehead* litigation. Nautilus argued that "the legal issues in each claim were largely the same, and it strains credulity to suggest that a mere 5% is allocable to the non-covered *Whitehead* claim." (Docket Entry No. 50 at 3). Nautilus offered the affidavit of its own attorney, John Tollefson, stating that "50% of the time allegedly spent by counsel for IHOP in the instant matter was spent in pursuit of coverage in the *Khalaf* matter and 50% of the time allegedly spent by counsel for IHOP in the instant matter was spent in pursuit of coverage in the *Whitehead* matter." (*Id.*, Ex. F, ¶ 6). Tollefson did not venture an opinion about what percentage of the attorneys' time would have been spent if only the covered claim had been litigated. Nautilus interpreted his statements as arguing that no more than 50% of the fees sought in this coverage litigation should be allocated to the successful claim for coverage of the *Khalaf* lawsuit. (Docket Entry No. 50 at 3).

4

Nautilus did not immediately renew its objection after IHOP filed the updated Coldwell affidavit on April 30, 2009. Instead, on August 31, 2009, Nautilus filed a request for a status conference and for discovery into IHOP's fee allocation. (Docket Entry No. 69). In making that request, Nautilus reasserted its allocation arguments, arguing that "[e]ven though the two suits were nearly identical, IHOP got greedy and allocated 95% of its fees to the covered claim." (*Id.* at 1-2) (internal record citations and emphasis removed). Nautilus argued that "some discovery and a trial will be necessary" to differentiate the amounts billed between the successful and unsuccessful coverage claims. (*Id.* at 2).

This court granted Nautilus's request for a status conference, (Docket Entry No. 70), which was held on October 6, 2009. At the status conference, the parties reasserted their allocation arguments. This court declined to allow additional discovery because the record provides the undisputed information necessary to resolve the allocation issue. (Docket Entry No. 72). IHOP's fee application is addressed below.

## II.    The Applicable Law

"'State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision.'" *Walker Int'l Holdings, Ltd. v. Republic of Congo*, 415 F.3d 413, 415 (5th Cir. 2005) (quoting *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)). Section 542.060 of the Texas Insurance Code imposes a penalty on insurers for failure to pay claims within certain time frames specified in sections 542.057and 542.058 of the Prompt Payment Statute. Section 542.060 states:

> (a) If an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount

> of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees.
>
> (b) If a suit is filed, the attorney's fees shall be taxed as part of the costs in the case.

TEX. INS. CODE § 542.060.  In *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1 (Tex. 2007), the Texas Supreme Court held that the Prompt Payment Statute's penalty and attorneys' fee provision, § 524.060, applies to an insured's claims for the cost of defending against a suit filed by third-party claimant.  242 S.W.3d at 16-20.  Under Texas law, attorneys' fees are also available to the prevailing party in a breach-of-contract action.  TEX. CIV. PRAC. & REM. CODE § 38.001.

A plaintiff seeking statutory attorneys' fees has the burden of demonstrating the reasonableness and necessity of the fees and to segregate recoverable fees from unrecoverable fees.  *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–14 (Tex. 2006); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991); *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007); *Am. Home Assur. Co. v. United Space Alliance, LLC*, 378 F.3d 482, 490-95 (5th Cir. 2004).  A court may reduce the number of hours awarded if the fee documentation provided is vague or incomplete.  *See Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

Both the Fifth Circuit and the Texas courts use the lodestar method for calculating attorneys' fees.  *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008); *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 867 (5th Cir. 2004); *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 433 (5th Cir. 2003); *AMX Enters., L.L.P v. Mater Realty Corp.*, --- S.W.3d ---, 2009 WL 51036, at \*\*9–11 (Tex. App.–Fort Worth 2009, no pet. h.)*; Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 782 (Tex. App.–Fort Worth 2005, pet. granted, judgm't vacated w.r.m.); *see*

*also Guity v. C.C.I. Enter., Co.*, 54 S.W.3d 526, 528 (Tex. App.–Houston [1st Dist.] 2001, no pet.) ("In determining the reasonableness of attorney's fees, the fact finder must be guided by a specific standard. This standard is substantially similar under both federal law and state law."). The first step is to determine the reasonable hourly rate for the attorneys and nonlegal personnel who worked on the case. The reasonable hourly rate is based on "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The second step is to determine the number of hours "reasonably expended" by the attorneys. *McClain*, 519 F.3d at 284. The court then multiplies the hours "reasonably expended" by the reasonable hourly rate to determine the lodestar figure. *Id.* The fee applicant has the burden of demonstrating the reasonableness of the hours expended and the hourly rates charged. *Id.*

Once the lodestar is determined, a court must determine whether to increase or decrease the amount based on the factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939 (1989).[2] The twelve *Johnson* factors are (1) the time and labor involved, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to this case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations, (8) the amount involved and results obtained, (9) the experience, reputation, and

---

[2] The Supreme Court recently heard oral argument in *Perdue v. Kenny A.*, No. 08-970, 129. S.Ct. 1907 (2009) (granting certiorari in part), a case in which the question presented is: "Can a reasonable attorney's fee award under a federal fee-shifting statute ever be enhanced based solely on quality of performance and results obtained, or are these factors already included in the lodestar calculation?" Brief for the Petitioner at i, *Perdue v. Kenny A.*, No. 08-970, 2009 WL 1817043. *Perdue* involves a federal civil rights claim and a fee award under 42 U.S.C. § 1988. Unless *Perdue* is decided on constitutional grounds – a result not urged in the petitioner's merits brief – its outcome will be inapplicable to this case, which involves Texas law. In any event, Nautilus has not objected to the overall amount of fees, only the allocation between the successful and unsuccessful claims.

ability of counsel, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.* at 717–19. Texas courts weigh the similar factors set out in Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct to determine reasonable fees. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *Brazos Elec. Power Co-op, Inc. v. Weber*, 238 S.W.3d 582, 585–87 (Tex. App.–Dallas 2007, no pet.).

When a plaintiff seeks to recover attorneys' fees in a case involving multiple claims, at least one of which supports a fee award and at least one of which does not, the plaintiff must offer evidence segregating the hours worked among the recoverable and unrecoverable claims. *Chapa*, 212 S.W.3d at 310-14; *Navigant Consulting*, 508 F.3d at 298; *Lesikar v. Moon*, 237 S.W.3d 361, 378 (Tex. App.–Houston [14th Dist.] 2007, pet. denied) (citing *Chapa*, 212 S.W.3d at 314). There is an exception to the duty to segregate when discrete legal services advance both a recoverable and unrecoverable claim that are so intertwined that they cannot be segregated. *Chapa*, 212 S.W.3d at 313-14. The party seeking to invoke this exception has the burden of demonstrating that it should apply. *See Gallagher Headquarters Ranch Dev., Ltd. v. City of San Antonio,* 269 S.W.3d 628, 641-42 (Tex. App.–San Antonio 2008, pet. filed) (citing *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 455 (Tex. App.–Houston [1st Dist.] 2007, no pet.)). When such legal services are at issue, the fee applicant should identify the percentage of the time spent that would have been necessary even without the unrecoverable claim. *Chapa*, 212 S.W.3d at 314.

**III.   Analysis**

    **A.   The Fees and Costs Incurred in Defending the Covered Lawsuit**

In the March 31, 2009 Memorandum and Order, (Docket Entry No. 67), this court held that Nautilus is liable for IHOP's costs of defending the underlying *Khalaf* lawsuit and for the 18% annual penalty provided by the Prompt Payment Statute, TEX. INS. CODE § 542.060. Nautilus does not object to the reasonableness of the $14,973.55 fee for defense costs. (Docket Entry No. 50 at 2). IHOP has submitted an affidavit from its lead counsel in the *Khalaf* case with billing records. (Docket Entry No. 68, Ex.1). IHOP has also submitted an affidavit of one of its attorneys in this coverage litigation, calculating the 18% statutory penalty as $15,804.49 on April 30, 2009. This calculation is based on multiplying the total invoiced defense costs, $14,973.55, by the daily interest rate–the 18% annual rate divided by 365 days–by the number of days between the date IHOP paid the invoice and April 30, 2009. (*Id.* at 2). The penalty begins to accrue on the date IHOP paid each legal bill. *See Lamar Homes, Inc.*, 242 S.W.3d at 19 (citing *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 565 (5th Cir. 2004)); *Trammell Crow Residential Co. v. Virginia Surety Co., Inc.*, 642 F. Supp. 2d 844, 857-59 (N.D. Tex. 2008) (interpreting *Lamar Homes*). Nautilus does not dispute this approach or result. As reflected in the chart below, as of November 1, 2009, the Prompt

| Invoice No. | Invoice Date | Invoice Amount | Pay Date | Days to 4/30 | 4/30/09 18% Int. | Days to 11/1 | 11/1/09 18% Int. |
|---|---|---|---|---|---|---|---|
| 4392736 | 8/30/2002 | $1,629.68 | 10/15/2002 | 2389 | $1,919.99 | 2574 | $2,068.67 |
| 4403244 | 9/17/2002 | $2,249.24 | 11/8/2002 | 2365 | $2,623.29 | 2550 | $2,828.50 |
| 4410166 | 10/21/2002 | $927.28 | 12/31/2002 | 2312 | $1,057.25 | 2497 | $1,141.85 |
| 4419500 | 11/11/2002 | $280.78 | 2/6/2003 | 2275 | $315.01 | 2460 | $340.63 |
| 4494064 | 8/10/2003 | $6,185.95 | 9/18/2003 | 2051 | $6,256.79 | 2236 | $6,821.15 |
| 4592815 | 9/8/2003 | $3,234.28 | 11/10/2003 | 1998 | $3,186.78 | 2183 | $3,481.86 |
| 4510258 | 10/8/2003 | $338.43 | 12/17/2003 | 1961 | $327.28 | 2146 | $358.16 |
| 4535390 | 1/11/2004 | $127.91 | 3/15/2004 | 1872 | $118.08 | 2057 | $129.75 |
| TOTAL | | $14,973.55 | | | $15,804.49 | | $17,170.57 |

Payment Act interest penalty amount is $17,170.57. For each day after November 1 that the

9

$14,973.55 in defense costs remain unpaid, the 18% interest penalty will continue to accrue at a rate of $7.38 per day.[3]

### B.      The Attorneys' Fees for this Coverage Litigation

IHOP is also entitled to the reasonable attorneys' fees it incurred in pursuing coverage. TEX. INS. CODE § 542.060(b). In July 2005, when Nautilus submitted its response to IHOP's summary judgment cross-motion on the Prompt Payment Statute issues, which also served as a reply in support of Nautilus's summary judgment motion, Nautilus stipulated that the hourly rates for the fees paid by IHOP in the coverage litigation were reasonable. (Docket Entry No. 50 at 3). As of June 6, 2005, IHOP had reported $70,661.28 in fees in addition to approximately $15,000 more in fees solely on the Prompt Payment Statute briefing. (Docket Entry No. 46, Ex. B, Coldwell Aff., ¶¶ 5-6). Nautilus did not dispute the number of hours billed. (*Id.*) Nautilus did object to IHOP's assertion that 95% of that amount would have been required in seeking coverage for the *Khalaf* suit alone.[4] (*Id.* at 3). IHOP is entitled to the fees it incurred in the coverage litigation; the only question remaining is the allocation of those fees between the covered and uncovered claims.

In the four-and-one-half years since the original briefing, IHOP's fees in the coverage litigation have increased. According to the April 29, 2009 affidavit filed by IHOP's counsel throughout this coverage litigation, "IHOP ha[d] incurred attorneys' fees, costs and expenses in connection with the Nautilus litigation totaling $117,174.34" as of March 31, 2009. (Docket Entry

---

[3] The $7.38 daily interest is based on dividing the annual interest rate, .18 by 365, the number of days in each year, to determine the daily interest rate (0.00049). That daily rate was then multiplied by total defense cost, $14,973.55, to arrive at $7.38.

[4] Before the Texas Supreme Court ruled on the issue, Nautilus also contended that attorneys' fees should not be awarded at all because the Prompt Payment Statute did not apply. In *Lamar Homes*, the Texas Supreme Court concluded that the statute did apply. In the March 31, 2009 opinion, this court concluded that the statue was constitutional as applied to Nautilus. (Docket Entry No. 67).

10

No. 68, Ex. 2, Coldwell Aff., ¶ 6). Nautilus has not objected to the number of hours or to he attorneys' hourly rates. Nautilus has, however, reiterated its objection to IHOP's allocation of fees between the covered *Khalaf* claim and the uncovered *Whitehead* clam. (Docket Entry No. 69 at 1-2). IHOP has satisfied its burden of showing that the covered and uncovered claims are so intertwined that they cannot be segregated. The legal issues critical to coverage were the same for both the *Khalaf* and the *Whitehead* claims. The close relationship between the uncovered and the covered claims is apparent in this court's prior opinions, the Coldwell affidavits, the billing records from both Jenkens & Gilchrist and Haynes & Boone, and the coverage arguments the lawyers made in the 2005 court filings and at the October 2009 status conference. It is necessary to determine what part of the fees would have been incurred had IHOP pursued coverage only for the *Khalaf* lawsuit, rather than for both the *Khalaf* and *Whitehead* lawsuits. *See Chapa*, 212 S.W.3d at 313-14.

In her more recent affidavit, Coldwell stated that "less than 5% of the total amount of attorneys' fees and expenses incurred by IHOP in connection with the Nautilus Litigation can be attributed solely to the pursuit of coverage for the *Whitehead* litigation." (Docket Entry No. 68, Ex. 2, Coldwell Aff., ¶ 22). Nautilus argues that "[e]ven though the two suits were nearly identical, IHOP got greedy and allocated 95% of its fees to the covered claim," which Nautilus calls an "absurdly unbalanced division." (Docket Entry No. 69 at 1-2 (internal record citations and emphasis omitted). This echoes the argument Nautilus made in its 2005 briefing that "the legal issues in each claim were largely the same, and it strains credulity to suggest that a mere 5% is allocable to the non-covered *Whitehead* claim." (Docket Entry No. 50 at 3). But it is precisely because the two claims were so similar and intertwined that the percentage of the overall fee that would have been incurred in litigating coverage even without the unsuccessful *Whitehead* claim is high. Most of the

11

work would have been necessary in seeking coverage for either of the two underlying lawsuits. The issue is what fees would have been incurred if the *Khalaf* suit was the only coverage claim.

Some of the billings clearly relate only to the *Khalaf* suit. In September 30, 2004, this court held that Nautilus had no duty to defend or indemnify IHOP in the underlying *Whitehead* lawsuit. (Docket Entry No. 31). The billings after that date are, with few exceptions, attributable only to the covered *Khalaf* suit. IHOP is entitled to recover all of those fees. The exceptions are for attorneys' fees incurred in litigating the allocation of fees between the covered and uncovered claims. The record reveals that the attorneys billed little time to the fee-allocation issues. The briefing on fee allocation was limited to a few sentences in IHOP's cross-motion for summary judgment, (Docket Entry No. 45 at 3-4), in IHOP's three-page reply brief, (Docket Entry No. 53), and in the two affidavits from IHOP's counsel, Deborah Coldwell (Docket Entry Nos. 46, Ex. B; 68, Ex. 2). The issue was also raised in a brief telephone status conference on October 6, 2009. Because the fee-allocation work is a small part of the fees for these briefs, affidavits, and appearances, IHOP is entitled to recover 95% of those fees.

Fee allocation was a minor component of IHOP's cross-motion for summary judgment, which also served as the response to Nautilus's motion for summary judgment. (*See* Docket Entry No. 45). Only five sentences of the eighteen-page brief were devoted to fee allocation. The limited discussion included no case citations. (*Id.* at 3-4). The rest of the brief addressed the then-unsettled issues about the Prompt Payment statute's application to an insurer's duty to defend and whether the statute was constitutional. These issues were vigorously disputed, extensively researched, and thoroughly argued in the briefs. Similarly, in the first Coldwell affidavit, only one paragraph out of eleven addressed fee allocation. In the second affidavit, a single paragraph (out of twenty-four) addressed fee allocation. The work that went into preparing these affidavits – reviewing all of the

12

coverage litigation billing records – would have been required even without the coverage claim for the *Whitehead* suit.

The record includes evidence of legal fees for work performed on IHOP's cross-motion for summary judgment. There are two billing entries on the May 20, 2005 bill that appear to be for work on the cross-motion. The first is $425.50 in fees for Leslie Thorne's time on April 4, 2005. The second is $37.00 in fees for Thorne's time the following day. IHOP is entitled to 95% of those two charges and 100% of the remainder of the bill. The June 21, 2005 bill, covering charges between May 4, 2005 and May 31, 2005, also appears to be for work on the cross-motion. IHOP is entitled to 95% of the $10,417.55 charged on that bill. The July 25, 2005 bill, for legal work performed between June 1, 2005 and June 30, 2005, is also for time spent in preparing IHOP's cross-motion for summary judgment, including the first Coldwell affidavit. IHOP is entitled to 95% of the $14,319.50 in fees included in that bill.

The August 22, 2005 reply brief accounts for most of the time spent by IHOP's counsel on fee allocation. Haynes and Boone's September 15, 2005 bill, which covers fees charged for work between July 27, 2005 and August 22, 2005,[5] appears to be for work on the August 22 reply brief. The reply brief is directed to refuting Nautilus's argument that half of the fees should be allocated to each of the underlying lawsuits at issue in this coverage suit, arguing that "virtually everything IHOP has done relating to this matter would have been necessary even if only the *Khalaf* matter was involved." (Docket Entry No. 53 at 2 (emphasis removed)). Roughly a quarter of the brief addresses the constitutionality of the Prompt Payment statute as applied to Nautilus, a discussion that would have been relevant if the *Khalaf* suit was the only coverage claim. Accordingly, IHOP

---

[5] One billing entry for attorney David Taubenfeld is listed on August 23, but the description of his time reveals that it was spent making final revisions to and filling the reply brief. Because the brief was filed on August 22, the date on the bill appears to be in error.

13

is entitled to recover 25% of the $3,950.20 in fees billed on the September 15, 2005 bill. Finally, IHOP is entitled to 95% of the fees billed for time spent on the second Coldwell affidavit and on the October 2009 status conference.

Other than the fees for work on fee allocation, IHOP is entitled to recover from 100% of the fees incurred after September 30, 2004 because they are attributable to the *Khalaf* claim. As to the fees billed before September 30, 2004, it is difficult to identify time that would have been incurred for work only on the coverage claim for the *Khalaf* litigation. None of the defenses asserted in IHOP's answer were tailored to one underlying lawsuit or the other. (Docket Entry No. 8). The only separate mention of *Whitehead* in the answer was an admission that, according to the allegations in the underlying petition, the underlying plaintiff was hired as a waitress at the Baytown IHOP. (*Id.*, ¶ 7). IHOP generally denied the remaining allegations in the complaint concerning the *Whitehead* litigation. (*Id.*).

IHOP's March 2, 2004 cross-motion for summary judgment and response to Nautilus's summary judgment motion did not treat the coverage issues presented by the *Khalaf* and *Whitehead* claims as distinct. (Docket Entry No. 21). Although this court ultimately held that the employment-related practices exclusion warranted a different result in the underlying lawsuits, the legal analysis was the same for each suit. The difference in the petitions in the underlying cases was narrow but important. The plaintiff in the *Khalaf* case alleged that she was sexually assaulted while working and by someone who had used his authority as an employer. The plaintiff in the *Whitehead* case did not include such allegations. (Docket Entry No. 31 at 28-30). The legal issues were nonetheless the same for both underlying lawsuits. The analysis included interpreting the meaning of "occurrence" in the Nautilus policies, determining whether the employer liability exclusion applied to IHOP or Amin, determining whether the employment-related practices exclusion could

14

apply to a franchisor, and determining the scope of the employment-related practices exclusion. IHOP's motion – and Nautilus's briefing – made no meaningful distinctions between the two underlying lawsuits. IHOP noted only that different Nautilus policies applied to each claim because a new policy was issued in December of each relevant year and that indemnity was an issue for the *Khalaf* claim.[6] Otherwise, in the motion and a subsequent reply, IHOP treated the claims the same. (*Id.*).

The billing records attached to the updated Coldwell affidavit are consistent with the approach in the pleadings, motions, and briefs. Counsel for IHOP considered the coverage issues to be the same for both underlying lawsuits. Nonetheless, some of the time billed would not have been necessary in pursuing coverage for the *Khalaf* lawsuit alone. Although the legal analysis was the same, the presence of the second lawsuit created a larger factual record. For example, on the September 30, 2003 Jenkens & Gilchrist invoice, a charge appears for Coldwell's time spent on August 19, 2003 reviewing and outlining the underlying suits and possible defenses. These tasks would have required less time had there been only one underlying lawsuit instead of two. But the billing records, the court filings, and this court's prior opinions make clear that this case involved little dispute about underlying facts. The issues have been legal. The additional factual record created by the *Whitehead* case had relatively little impact on how the case was litigated and the legal work performed to pursue IHOP's coverage claims. On September 30, 2004, this court held that one aspect of the analysis resulted in finding coverage for one of the underlying suits and not the other. Before that date, IHOP's legal work, time, and fees would have been only slightly less if only the covered claim had been present. It is reasonable to assess ten percent of the fees and costs incurred

---

[6] Of course, any mention of the *Khalaf* claim alone does not affect IHOP's fee award because they would have pursued those arguments had the *Khalaf* claim been the only one at stake.

in pursuing the coverage litigation before September 2004 to the unsuccessful claim and ninety percent to the successful claim. IHOP is entitled to ninety percent of its attorneys' fees and costs incurred in the coverage litigation before September 30, 2004.

**IV.     Conclusion**

IHOP's fee application is granted in part and modified in part. IHOP is ordered to submit a proposed judgment consistent with this Memorandum and Order by **December 31, 2009.**

SIGNED on December 15, 2009, at Houston, Texas.

　　　　　　　　　　　　　　　　Lee H. Rosenthal
　　　　　　　　　　　　　　　　United States District Judge